RACKLIFFE-GIBSON CONSTRUCTION COMPANY, Respondent, v. ZIELDA-FORSEE INVESTMENT COMPANY, Appellant.

Kansas City Court of Appeals, April 21, 1913.

1. **SPECIAL TAXBILLS: Discount: Fraud.** It is not fraudulent for a contractor who is about to secure, or has secured, a contract for the paving of a certain district in a city, from the board of public works, in order to induce the parties in the benefited district not to contest the special taxbills issued for that purpose, to openly promise all the parties so assessed a discount for the prompt payment of the bills.

2. **————: Secret Rebate: Fraud.** The offer of a secret or a special rebate to one or more of the abutting property owners made by the successful bidder for the purpose of preventing or allaying the opposition of such owners to the proposed improvement, and at a time when their opposition might prove sufficiently effective to defeat the bidder and prevent him from obtaining the contract, is a fraud the law will not tolerate nor allow to come to a successful issue.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick*, Judge.

AFFIRMED.

*Joseph E. Corby* for appellant.

*Frank B. Fulkerson, J. A. Graham* and *Hugh C. Smith* for respondent.

JOHNSON, J.—This is an action to enforce the lien of a special tax bill issued by St. Joseph, a city of the second class. The only issue discussed in the briefs is whether or not the evidence shows as a matter of law that plaintiff, the contractor, offered and allowed a rebate to one of the interested property owners before the letting of the contract on condition that he would not oppose the contract nor contest the validity of the tax bills. This issue was tried in the circuit court without the aid of a jury and was decided adversely to defendant. Judgment was rendered for plaintiff in accordance with the prayer of the petition and defendant appealed.

The improvement in question consisted of the paving of Twenty-second street from Highway Bridge to Marion street with "Hassam" pavement, a patented material. The abutting property subject to assessment had a total frontage of 2946 feet, of which defendant owned 667 feet and the cost of the work assessed against the property of defendant was $3397.30.

The statutes relating to street improvements in cities of the second class (sec. 8, *et seq.*, p. 62, Laws 1903), invested the board of public works of St. Joseph with extensive powers in such matters. When acting unanimously the board had authority to initiate an improvement such as the paving of a public street on its own motion and without a petition signed by property owners. In such cases it was the duty of the board to prepare an ordinance for the improvement and to submit it to the common council, together with all objections filed with the board, with such recommendations as the board might desire to make to the council and with full plans and estimates of the cost of the improvement. But before submitting such ordinance to the council the board was required to publish in the

official paper of the city a notice to ''all persons in-
terested of the time and place when and where the said
board will hear objections to such proposed ordi-
nance.'' The board passed on objections filed pursu-
ant to such notice and if they were overruled then sub-
mitted the ordinance to the council. On the enactment
of the ordinance the duty devolved on the board of
advertising for bids and of letting the contract ''to the
lowest and best bidder.''

Such was the method pursued in the present in-
stance. The ordinance was passed July 16, 1907, and
at the time and place stated in the advertisement for
proposals the board opened the bids and awarded the
contract to plaintiff as the lowest and best bidder. It
appears from the evidence that defendant objected to
the improvement from the beginning and at the time
the contract was awarded both plaintiff and the mem-
bers of the board knew of defendant's hostile attitude
and of its purpose to contest the tax bills. Another
extensive property owner also objected to the letting
of the contract for ''Hassam'' pavement and its presi-
dent, Mr. Samuel I. Motter, appeared before the board
on the occasion of the opening of the bids and pro-
tested against the awarding of the contract on the
ground of the excessive cost of paving the street with
the patented material. He testified that he made his
objections to the board in the presence of the agent of
plaintiff. He expressed the view that the opposition
of defendant to the improvement and the probability
of a legal contest should the contract be awarded to
plaintiff had caused plaintiff to increase its bid and
that a manifest injustice would be done the other
property owners if they should be compelled to bear
the burden of such contest, which would be the case
if the proposal of plaintiff were accepted. This ar-
gument was unavailing and Mr. Motter left the pres-
ence of the board with the understanding that the
contract either had been awarded to plaintiff or would

be so awarded at that meeting. He was followed from the room by the agent of plaintiff who engaged him in conversation, in the course of which, according to his testimony, the agent stated: ''Well, now we want to do the right thing and if you people will not contest the tax bills, why we will allow you a discount on them, as I remember it was ten per cent.'' On cross-examination Mr. Motter further testified: ''Q. I will ask you if Mr. Gibson (the agent) also in that conversation which you have related did not tell you that any offer he made to you would be to any other property owner on the street—that anybody that would pay their bills promptly that he would give them the discount, or words to that effect? A. Well, as I remember I think he did say that. Those that pay their bills or who do not contest them, we will give them a discount on them. Q. And he made it general to every one? A. That is my recollection about it. Q. You never had any further conversation with the board about it in any way? A. I don't recollect any further conversation about it.''

The witness was not certain whether his protest and argument to the board occurred immediately before or immediately after the awarding of the contract to plaintiff, but the fact is undisputed that it was made at the meeting at which the proposals were opened and the contract awarded and at a time when the board had authority to reject the bid of plaintiff and to refuse to enter into a contract with him.

The agent offered as a witness by plaintiff testified that after the contract had been awarded he left the office of the board with Mr. Motter and told him on the street that ''We had made a proposition or were ready to make a proposition that we would offer anybody or anyone who paid their tax bills in cash would receive a discount of ten per cent. That included every property owner on the street.''

It is the contention of plaintiff that this conversation was the one to which Mr. Motter referred in his testimony and that it occurred after the contract had been let. None of the members of the board appeared as a witness. Plaintiff introduced some other testimony tending to show that the subject of letting the contract was open and undermined at the time Motter and the agent retired from the presence of the board and that the award was not made until after the reappearance of the agent alone. No declarations of law were asked or given and with the case in such posture we are bound to view the evidence in its aspect most favorable to plaintiff. In other words, our consideration of the controverted issue must proceed from the same position it would be our duty to take were the case before us on a demurrer to the evidence offered by defendant.

The rule is well settled that the offer of a secret or special rebate to one or more of the abutting property owners made by the successful bidder for the purpose of preventing or allaying the opposition of such owners to the proposed improvement and at a time when their opposition might prove sufficiently effective to defeat the bidder and prevent him from obtaining the contract, is a fraud the law will not tolerate nor allow to come to a successful issue. [Kurtz v. Knapp, 127 Mo. App. l. c. 612; Rider v. Parker-Washington Co., 144 Mo. App. 67; Field v. Barber Co., 117 Fed. l. c. 928.]

It is well said by McPherson, J., in the case last cited: "If this be so (i. e., if special rebate were offered) it would be bribery and corruption, as fully as if money were paid directly to prevent protests and, in my judgment ought to and would defeat the special tax bills."

And in the Kurtz case this court, speaking through Ellison, J., observed "the inevitable effect of his (the

contractor's) action is to increase the price to general property holders so that he may be enabled to decrease it to those he had favored. Such scheme is founded either in corruption, or some unfair advantage, or for some improper purpose.''

In 2 Elliott on Roads and Streets (3 Ed.), sec. 729, the rule thus is stated: ''Where a contractor makes a private contract with part of the property owners, wherein he agrees to do the work at a specified price, his conduct has been deemed such a fraud upon the other owners as will preclude him from enforcing the assessment against them.''

Obviously the vice of such conduct lies in its tendency to increase the cost of the work to honest property owners, to corrupt such property owners as might be seduced into participation in a scheme that would give them an undue advantage over their neighbors and frequently to result in the doing of unnecessary public work that would not be done if honest opposition were given its rightful opportunity.

But in instances where a discount or rebate is offered at a time and under circumstances preclusive of the idea that it could have such evil and vicious tendency, the rule we have been discussing has no application. Thus where the offer is that of a cash discount for the prompt payment of a tax bill and is not made until after the contract has been let and the work completed, it cannot be said to be founded in corruption. We had that question before us in the Kurtz case where we say:

''The most that can be said was done in this case was that after the work was finished and the apportionment made, a small discount was allowed one person upon his payment of a bill amounting to more than seven hundred dollars. There is no evidence that this was in pursuance of any previous understanding or that it was connected with any improper or unfair purpose, or that it could possibly have affected the

public bid or the rights of other property holders.
The transaction was not connected with any phase of
the case which could directly or indirectly affect the
other property holders. It appears to be no more than
the contractor for some reason, not at all connected
with letting the contract or doing the work, concluded
to allow a small discount for payment.''

In the present case we must infer that the court
sitting as a jury found as a fact that the offer to the
protesting property owner was that of a small dis-
count for the prompt payment of the tax bill that
would be issued against his property and that this
offer was not secret or special but was general and
open to all interested property owners who might wish
to avail themselves of it. Such inference finds ample
support in the testimony of Mr. Motter and of plain-
tiff's agent and since declarations of law were given
or asked we are warranted in assuming that the judg-
ment before us was based on facts found by the court
of which those stated were a part. We think these
facts are not consistent with the view that the offer
was the result of a corrupt or improper purpose though
maoe at a time when the board of public works had
authority to reject the proposal of plaintiff. What
benefit was offered to Mr. Motter that was denied or
withheld from defendant or from any other property
holder? All were placed in the same position, and
no one was offered any special privilege or benefit.
The fraud in such offers consists in the attempt to take
money out of the pockets of some of the property
owners without their knowledge or consent and to put
it into the pockets of a favored few, to the spoliation
of one class, the corruption of the other and the de-
feat of the true purposes and objects of the taxing
power of government. The opposition of Mr. Motter
had proved ineffective to change the purpose of the
board to let the contract to plaintiff and he had shot
his last bolt, but had he been in position to go on with

his contest, we say that the offer of plaintiff that put him out of action was one he could accept with honor since it accorded no special benefit or privilege to his company but was for the equal benefit of all interested property holders. We know of no law or rule of morals that would denounce as improper a general offer of a bidder made before the letting of the contract to allow a reasonable cash discount to all property holders who paid their tax bills within a specified time.

The judgment is affirmed. All concur.